IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| STANLEY H. ENGLE, | : | CIVIL ACTION |
| Plaintiff, | : | No. 08-5831 |
| v. | : |  |
| MATRIX GOLF & HOSPITALITY PHILADELPHIA, LLC, ET AL., | : |  |
| Defendants. | : |  |

**MEMORANDUM**

**ROBERT F. KELLY, Sr. J.**                                                      **MARCH 31, 2009**

Presently before the Court is the Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6), or in the Alternative, to Transfer Venue to the United States District Court for the District of New Jersey filed by Defendants Matrix Golf & Hospitality Philadelphia, LLC, et al.  For the reasons that follow, the Motion is denied.

**I.    BACKGROUND**

Plaintiff Stanley H. Engle ("Engle") is a citizen of Florida, who additionally maintains two residences in Bryn Mawr, Pennsylvania.  Defendant Matrix Golf & Hospitality Philadelphia, LLC ("Matrix Philadelphia") is a New Jersey limited liability company, which owns and manages golf clubs in Pennsylvania.  Defendant Matrix Golf & Hospitality Services, LLC ("Matrix GHS") is a New Jersey limited liability company and a member and manager of Matrix Philadelphia.  Defendant Taylor/Epstein Investment Fund, LLC ("Taylor/Epstein") is a New Jersey limited liability company, which is a member and manager of Matrix GHS.  Defendant Matrix/Ashbourne Management Corp. ("Matrix/Ashbourne") is a Pennsylvania limited liability

company.  Defendant Matrix Development Group, Inc. ("Matrix Development") is a New Jersey corporation and an affiliate of and/or in control of Matrix Philadelphia, Taylor/Epstein, Matrix GHS, and Matrix/Ashbourne Associates, LP.  Defendant Matrix/Ashbourne Associates, LP is a Pennsylvania limited partnership.  Defendant The Fairways at Cedarbrook Hills, LP ("Fairways at Cedarbrook Hills") is a Pennsylvania limited partnership.  Defendant Cedarbrook Fairways Development, LLC ("Cedarbrook Fairways") is a Pennsylvania limited liability company, having as its sole member Taylor/Epstein.[1]  Defendants Joseph S. Taylor ("Taylor") and Donald M. Epstein ("Epstein") are residents of New Jersey and officers and shareholders of Matrix Development and other Matrix Defendants.

The allegations of Engle's Complaint stem from a series of loans that Engle made to Matrix Philadelphia from September 2000 to February 2002.  The first of these loans took place in September 2000, when Engle loaned Matrix Philadelphia $2,700,000.00.  On September 25, 2000, Matrix Philadelphia executed a Promissory Note evidencing its obligation to pay the principal balance of the loan, $2,700,000.00, plus interest.  On May 15, 2001, Engle made a second loan to Matrix Philadelphia in the amount of $450,000.00.  On February 10, 2002, Engle made a third loan to Matrix Philadelphia, this time in two installments, with one loan in the amount of $600,000.00, and the other in the amount of $200,000.00.  Matrix Philadelphia is currently in default on these loans, and as a result, Engle filed suit in this Court on December 15, 2008, seeking to recover more than $3,950,000.00 from the Matrix Defendants, Taylor, and Epstein.

Engle contends that Matrix Development, Taylor/Epstein, Matrix GHS, Taylor, and

---

[1] The above-mentioned entities will be collectively referred to as the "Matrix Defendants."

Epstein controlled Matrix Philadelphia and that all of the Matrix Defendants are alter egos of one another.  In support of this contention, Engle alleges that all persons involved in the management of Matrix Philadelphia were also employees of Matrix Development, Taylor/Epstein, or Matrix GHS, and that the Matrix Defendants had common members, shareholders, and officers.

The Complaint alleges that the Matrix Defendants, through their control over the operations of Matrix Philadelphia, caused Matrix Philadelphia to transfer its funds to other Matrix affiliates, and thereby, caused it to be unable to repay the loans Engle had made to it when those affiliates could not make payments to Matrix Philadelphia.  According to Engle, Matrix Development, Taylor/Epstein, Matrix GHS, Taylor, and Epstein structured Matrix Philadelphia so that its income relied solely on the receipt of funds from other Matrix affiliates.  Matrix Philadelphia, under the control of Matrix Development, Taylor/Epstein, Matrix GHS, Taylor, and Epstein loaned the money it had borrowed from Engle to Matrix/Ashbourne and Matrix CBH, for use at the Ashbourne and Cedarbrook Hills Country Clubs.  Matrix/Ashbourne and Matrix CBH agreed to pay management fees to Matrix Philadelphia for Matrix Philadelphia's management of the two country clubs.  The payment of these fees and the repayment of the loans made to Matrix/Ashbourne and Matrix CBH was Matrix Philadelphia's sole source of income.  However, according to Engle, Matrix Development, Taylor/Epstein, Matrix GHS, Taylor, and Epstein caused Matrix/Ashbourne and Matrix CBH to transfer assets and to take on debts to other Matrix affiliates without the assets necessary to do so.  Specifically, Engle alleges that in September 2005, Matrix Development, Taylor/Epstein, Matrix GHS, Matrix/Ashbourne, Taylor, and Epstein caused Matrix CBH to transfer property and assets to Fairways at Cedarbrook (the "Cedarbrook Transaction"), knowing that Matrix CBH did not have the necessary funds to make this transfer

3

and still pay its dues to Matrix Philadelphia. Engle asserts that, in so doing, the Matrix Defendants placed their own interests before those of Engle and other creditors and acted with an intent to defraud.

In Counts I through IV of his Complaint, Engle asserts claims against the Matrix Defendants, Taylor, and Epstein for breach of contract relating to each of the four loans Engle made to Matrix Philadelphia. Count V asserts a claim against the Matrix Defendants, Taylor, and Epstein for breach of the duty of good faith and fair dealing. Count VI asserts a claim for breach of fiduciary duty. Count VII asserts a claim for fraudulent transfer relating to the Cedarbrook Transaction. Defendants filed a Motion to Dismiss Engle's Complaint on February 12, 2009. The Matrix Defendants seek dismissal of all Matrix affiliates, with the exception of Matrix Philadelphia, on the grounds that the remaining affiliates were not parties to the loan agreements made between Engle and Matrix Philadelphia. The Defendants further seek dismissal of Counts V through VII of the Complaint for failure to state a claim upon which relief can be granted. Alternatively, if this Court declines to dismiss Engle's Complaint, Defendants ask that this Court transfer the matter to the District of New Jersey.

**II.     STANDARD OF REVIEW**

Rule 12(b)(3) allows a party to present, by motion, the defense of improper venue. Fed. R. Civ. P. 12(b)(3). 28 U.S.C. § 1406(a) provides that "the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Where federal jurisdiction is founded upon diversity of citizenship, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."

4

28 U.S.C. § 1391(a)(2).

When deciding whether to grant a Rule 12(b)(6) Motion to Dismiss, this Court must accept as true all well-pleaded allegations in the Complaint, and view them in a light most favorable to the plaintiff.  Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001).  Therefore, Defendant's Motion will be granted only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  Id.  Nonetheless, a plaintiff must plead specific factual allegations.  Neither "bald assertions" nor "vague and conclusory allegations" must be accepted as true.  See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Se. Pa. Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995).

### III. DISCUSSION

In their Reply Brief to Engle's Memorandum in Opposition to Defendant's Motion to Dismiss, Defendants asserted that this Court lacked subject matter jurisdiction over this action due to Engle's failure to properly allege citizenship in the Complaint.  This Court allowed leave to amend the Complaint.  Engle filed an Amended Complaint on March 24, 2009, wherein he has properly pled that he is a citizen of Florida.  As Defendants are citizens of Pennsylvania and New Jersey, this Court has subject matter jurisdiction based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.  We address the parties' remaining contentions below.

#### A. Alter Ego Liability

Defendants contend that the only viable claim alleged in the Complaint is the claim for breach of contract against Matrix Philadelphia.  Because the other Defendants were not parties to the contract, they claim that they should not bear liability for breach of that contract, or for any other claim set forth in the Complaint, as they all stem from the contract between Engle and

Matrix Philadelphia. On the other hand, Engle argues that all Defendants are liable under an "alter ego" theory. "Whenever one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interests, the fiction of the separate corporate identity may properly be disregarded." PSC Info Group v. Lason, Inc., No. 08-2176, 2008 U.S. Dist. LEXIS 84949, at *18-19 (E.D. Pa. Oct. 22, 2008) (citing Advanced Tel. Sys., Inc. v. Com-Net Prof'l Mobile Radio, LLC, 846 A.2d 1264, 1278 (Pa. Super. Ct. 2004)). Courts may disregard the corporate form and "pierce the corporate veil" where the entities involved are mere "alter egos" of each other. See E. Minerals & Chem. Co. v. Mahan, 225 F.3d 330, 334 n.6 (3d Cir. 2000). A corporation may be treated as an alter ego of its subsidiary where "the controlled corporation acted robot- or puppet-like in mechanical response to the controller's tugs on its strings or pressure on its buttons." PSC Info Group, 2008 U.S. Dist. LEXIS 84949, at *19 (quoting Culbreth v. Amosa, 898 F.2d 13, 15 (3d Cir. 1990)). Factors a court may consider in determining whether one entity is an alter ego of another include: "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetuate fraud." Id. (quoting Lumax Indus., Inc. v. Aultman, 669 A.2d 893, 895 (Pa. 1995)).

     Here, Engle alleges that Matrix Philadelphia was subject to the complete dominion and control of Matrix Development, Taylor/Epstein, Matrix GHS, Taylor, and Epstein. In support of this claim, Engle has alleged: 1) that everyone involved in the management of Matrix Philadelphia was also an employee of Matrix Development, Taylor/Epstein, or Matrix GHS; 2) that all of the Matrix Defendants share common members, officers, and shareholders with Matrix Philadelphia; and 3) that Matrix Development, Taylor/Epstein, Matrix GHS, Taylor, and Epstein

6

controlled Matrix Philadelphia and all other entities involved in this litigation.

These allegations are sufficient to withstand Defendants' Motion to Dismiss. While any one of Engle's allegations, taken alone, may not be enough to pierce the corporate veil on an alter ego theory, viewing the allegations in their entirety, Engle has sufficiently alleged that Matrix Philadelphia was the alter ago of the Matrix Defendants, Taylor, and Epstein. See PSC Info Group, 2008 U.S. Dist. LEXIS 84949, at *20. In PSC Info Group, the Court found that "when considering a motion to dismiss for failure to state a claim, the court will read this reference in the full context of the allegations contained within the complaint and supporting documentation." Id. Engle has presented evidence that, while the Matrix Defendants are structured as many different entities, they are, in fact, intermingled and all controlled by the same source. If Engle's allegations prove true, all of the Matrix Defendants may be liable under an "alter ego" theory of liability. Therefore, these allegations are sufficient at this stage of the proceedings.

### B. Fraudulent Transfer

Defendants argue that Engle has failed to plead fraud with particularity, as required by Rule 9(b). Defendants claim that, because Engle failed to identify the exact property and the circumstances under which the Cedarbrook Transaction took place, and because the allegations of the claim are based upon "information and belief," Engle's claim for fraudulent transfer fails under Rule 9(b). Rule 9(b) requires, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). In order to plead fraud with sufficient particularity, a plaintiff must present enough facts "to put the defendant on notice of the precise misconduct at issue." Wilmington Fin., Inc. v. Am. One Fin.,

Inc., No. 06-5559, 2007 U.S. Dist. LEXIS 55738, at *4 (E.D. Pa. July 31, 2007). Thus, a plaintiff must allege facts sufficient to allow the defendant to identify the transaction being alleged as fraudulent. See generally Bratek v. Beyond Juice, LLC, No. 04-4491, 2005 U.S. Dist. LEXIS 28137, *17 (E.D. Pa. Nov. 14, 2005).

     Here, the allegations of Engle's Complaint are sufficient to satisfy the pleading requirements of Rule 9(b). Engle identifies the Cedarbrook Transaction in paragraph 52 of the Amended Complaint. In that paragraph, Engle asserts that in September 2005, Matrix Development, Taylor/Epstein, Matrix GHS, Matrix/Ashbourne, Taylor, and Epstein caused Matrix CBH to transfer property and assets to Fairways at Cedarbrook. (Amend. Compl. ¶ 52.) Furthermore, viewing the Amended Complaint as a whole, Engle sets out in detail the circumstances surrounding this transaction. The Amended Complaint alleges that the Matrix Defendants structured Matrix Philadelphia so that its sole source of funds came from other Matrix Defendants. Matrix Development, Taylor/Epstein, Matrix GHS, Taylor, and Epstein caused Matrix Philadelphia to loan out the money it had borrowed from Engle to Matrix/Ashbourne for use at the Cedarbrook Hills Country Club. After Matrix Philadelphia loaned the money out to Matrix/Ashbourne, Matrix Development, Taylor/Epstein, Matrix GHS, Taylor, and Epstein caused Matrix Philadelphia to enter into management agreements, whereby Matrix/Ashbourne and Matrix CBH would make loan repayments to Matrix Philadelphia and pay Matrix Philadelphia management fees for Matrix Philadelphia's management of the Ashbourne and Cedarbrook Country Clubs. These payments were Matrix Philadelphia's sole source of income. Later, Matrix/Ashbourne and Matrix CBH were unable to make those payments to Matrix Philadelphia because Matrix Development, Taylor/Epstein, Matrix GHS,

Matrix/Ashbourne, Taylor, and Epstein caused them to transfer assets and take on debts, knowing that they did not have the financial assets to do so. Engle specifically points to the Cedarbrook Transaction in September 2005 as a specific instance of this scheme. Viewing the Amended Complaint in its entirety, these allegations are sufficient to put the Defendants on notice as to the precise conduct in question.

Furthermore, while Defendants correctly assert that allegations based upon "information and belief" are generally not enough to satisfy Rule 9(b), the paragraph wherein Engle identifies the Cedarbrook Transaction is not based upon information and belief. Defendants point to River Road Dev. Corp. v. Carlson Corp. for the proposition that allegations based upon "information and belief" are generally insufficient to establish the pleading requirements of Rule 9(b). No. 89-7037, 1990 U.S. Dist. LEXIS 6201, at *28 (ED. Pa. May 23, 1990). While this is true, as in River Road, many of the allegations relating to fraud in Engle's Amended Complaint are based on information and belief, yet the specific instance in which he identifies the Cedarbrook Transaction is not. In River Road, the court found that the plaintiff had established its fraud claim with sufficient particularity where the paragraph identifying the precise conveyances at issue was not based on information and belief, even though a number of the underlying allegations had been. Id. at *28-29. This is precisely the situation here. While most of Engle's allegations concerning the fraudulent transfer were based upon information and belief, paragraph 52 of the Amended Complaint, wherein Engle specifically identifies the Cedarbrook Transaction, is not. (See Amend. Compl. ¶ 52.) As such, we find that Engle has met the pleading requirements of Rule 9(b).

### C. Breach of Implied Covenant Good Faith and Fair Dealing

Defendants argue that no implied covenant of good faith and fair dealing exists where an express agreement covers the dispute, and therefore, Engle's claim for breach of the implied covenant must be dismissed. The law is clear that no implied covenant exists "as to any matter specifically covered by the written contract between the parties." USX Corp., v. Prime Leasing, 988 F.2d 433, 439 (3d Cir. 1993). It is only where there is no express agreement applicable to the dispute that "the law will imply an agreement by the parties . . . to do and perform those things that according to reason and justice they should do . . . and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract." Id. As such, a party cannot assert a claim for breach of the implied covenant of good faith and fair dealing "based on exactly the same acts which are said to be in breach of express covenants." Id.

Defendants argue that Engle's claim for breach of the implied covenant is premised upon Matrix Philadelphia's failure to pay amounts due on the loans, and therefore, is simply a misbranding of what is, essentially, a breach of contract claim. We disagree. Engle's claim is based on more than just Matrix Philadelphia's failure to pay amounts due under the loans. The Complaint further asserts that all of the Matrix Defendants, along with Taylor and Epstein, operated Matrix Philadelphia for their own benefit, and that they intentionally engaged in the transfer of funds and property to other Matrix affiliates to render Matrix Philadelphia without sufficient funds to repay its debts to Engle. Had Engle alleged only that Defendants breached their implied covenant of good faith and fair dealing by failing to make payment on the loans, then Defendants would be correct in their assertion that Engle is attempting to assert a claim under an implied covenant where those same acts are covered by express agreement. Id.; see also Frank Briscoe Co. v. Travelers Indem. Ins. Co., 65 F. Supp. 2d 285, 295 (D.N.J. 1999).

However, where, as here, the allegations of the Complaint allege more than what is covered in the agreement, the claim survives. See USX Corp., 988 F.2d at 439. Furthermore, even though a contract existed only between Engle and Matrix Philadelphia, the remaining Matrix Defendants remain liable under an alter ego theory of liability, as discussed above.

### D.  Breach of Fiduciary Duty

Defendants move to dismiss Count VI of the Complaint on the ground that the Defendants owe no fiduciary duty to Engle. Engle cites In re Allserve Sys. Corp. for the proposition that a debtor owes a fiduciary duty to its creditors when the debtor becomes insolvent or is close to becoming insolvent. 379 B.R. 69, *78-79 (Bankr. D.N.J. 2007). The issue in Allserve, as it is here, was whether New Jersey substantive law provides for a cause of action by a creditor against an insolvent or nearly insolvent debtor corporation for breach of fiduciary duty.[2] Id. at *77. The Allserve court, interpreting New Jersey case law on the issue under factual circumstances similar to those presented here, found that, while corporate directors generally owe no fiduciary duty to corporate creditors, a fiduciary duty to creditors may arise once a corporation becomes insolvent or is approaching insolvency. Id. at *77-79. Thus, while "'creditor-debtor' relationships . . . rarely are found to give rise to a fiduciary duty," id. at *78, once "a corporation becomes insolvent[,] the creditors' investment is at risk, and the directors should manage the corporation in their interests as well as that of the shareholders." Id. at *78-79 (quoting VFB, LLC v. Campbell Soup, Co., 482 F.3d 624, 635 (3d Cir. 2007)).

---

[2] The parties have agreed, in the Promissory Note evidencing the $2,700,000.00 from Engle to Matrix Philadelphia, that New Jersey law governs disputes arising from the loan. The Note reads: "Governing Law. This Note is to be construed and enforced in all respects in accordance with the laws of the State of New Jersey, without reference to conflicts of laws principles thereof." (Note, Amend. Compl., Ex. A, ¶ 11.)

11

Furthermore, earlier New Jersey cases on the issue had found that a fiduciary duty between a debtor and creditor may exist where the corporation holds funds in trust. See, e.g., McGlynn v. Schultz, 218 A.2d 408 (N.J. Super. Ct. Ch. Div. 1966), aff'd, 231 A.2d 386 (N.J. Super. Ct. App. Div. 1967). The Third Circuit has likened the relationship between an insolvent corporation and a creditor to the situation of a corporation holding funds in trust. See Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 173 (3d Cir. 2002). Specifically, it determined that "once a corporation becomes insolvent, . . . the directors assume a fiduciary or 'quasi-trust' duty to the corporation's creditors." Id. Defendants argue that debtors have a fiduciary duty to creditors only where the corporation is insolvent, and as the Complaint fails to allege that Matrix Philadelphia was insolvent, the claim must be dismissed. While Defendants are correct that the Complaint does not allege that Matrix Philadelphia was insolvent, this fact is not fatal to the claim. The Complaint alleges that the Matrix Defendants, Taylor, and Epstein acted to transfer property and assets from Matrix Philadelphia with the intent to leave the entity without sufficient funds to make payment on Engle's loans. For all intents and purposes, Engle is alleging that the transfers left Matrix Philadelphia insolvent. This is enough at this stage of the proceedings to allow Engle to proceed with the claim. The Motion to Dismiss is, therefore, denied with respect to Count VI.

### E.  Transfer of Venue

Alternatively, the Matrix Defendants request that this Court transfer this action to the U.S. District Court for the District of New Jersey. 28 U.S.C. § 1404(a) grants this Court the discretion to transfer a case to another district in which the action could have been brought for the convenience of the parties and witnesses and in the interests of justice. 28 U.S.C. § 1404(a).

The decision to transfer a case is "based on an individualized, case-by-case consideration of convenience and fairness."  Lomanno v. Black, 285 F. Supp. 2d 637, 643 (E.D. Pa. 2003) (quoting Dinterman v. Nationwide Mut. Ins. Co., 26 F. Supp. 2d 747, 749 (E.D. Pa. 1998)). Motions to transfer are granted sparingly, and the burden is on the moving party to show that the current forum is inconvenient.  Id.

In considering a motion to transfer, courts are encouraged to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."  Jumara v. State Farm Ins. Co, 55 F.3d 873, 879 (3d Cir. 1995).  Several of the factors to be considered include: plaintiff's forum preference as manifested in the original choice, the defendant's choice of forum, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of the witnesses (only to the extent that the witnesses are unavailable for trial in one of the fora), the location of books and records (only to the extent that files cannot be produced in one of the fora), the eventual enforceability of a final judgment, relative court congestion between the two fora, and local interests in deciding local conflicts at home.  Id. at 879-80.

In this case, the balance of factors weighs against transfer.  The plaintiff's choice of forum is accorded significant deference and should not be disturbed lightly.  Pro Spice, Inc. v. Omni Trade Group, 173 F. Supp. 2d 336, 340 (E.D. Pa. 2001).  While some of the Matrix Defendants are citizens of New Jersey, a substantial number of the facts giving rise to the claim took place in the Eastern District of Pennsylvania.  The loan agreements between Engle and Matrix Philadelphia took place in this District, payment on the Note was to be made in this

District, the funds borrowed from Engle were transferred from Matrix Philadelphia to Matrix/Ashbourne and Matrix CBH (two Pennsylvania partnerships), and the Cedarbrook Transaction involved parties and property in this District as well.

Furthermore, Defendants seek transfer to the District of New Jersey, which, as Engle points out, is a very short distance from this Court.  Given that the District of New Jersey is a mere thirty to forty miles from this Court, it cannot be said that the District of New Jersey is a significantly more convenient venue than this Court.  All of the witnesses can be made available in this forum, all books and records can be produced in this forum, and travel to Philadelphia would not be considerably more burdensome than travel to Trenton.  After considering these factors, as well as considering Engle's original choice of forum, we find that transfer is inappropriate.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STANLEY H. ENGLE, | : | CIVIL ACTION |
| Plaintiff, | : | No. 08-5831 |
| v. | : | |
| MATRIX GOLF & HOSPITALITY PHILADELPHIA, LLC, ET AL., | : | |
| Defendants. | : | |

## **ORDER**

**AND NOW**, this 31st day of March, 2009, upon consideration of the Defendants' Motion to Dismiss Plaintiff's Complaint or Alternatively to Transfer Venue (Doc. No. 18), and the responses and replies thereto, it is hereby **ORDERED** that the Motion to Dismiss or Transfer Venue is **DENIED**.

BY THE COURT:

/s/ Robert F. Kelly
ROBERT F. KELLY
SENIOR JUDGE